ORIGINAL

# In the United States Court of Federal Claims

No. 14-1099C

(Filed: February 20, 2015)

(NOT TO BE PUBLISHED)

FILED
FEB 20 2015
U.S. COURT OF
FEDERAL CLAIMS

```
*************************************
                                     )
PASCALE PIERRE,                      )
                                     )
                Plaintiff,           )
                                     )
   v.                                )
                                     )
UNITED STATES,                       )
                                     )
                Defendant.           )
                                     )
*************************************
```

Pascale Pierre, *pro se*, Atlanta, GA.

Veronica N. Onyema, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the brief were Joyce R. Branda, Acting Assistant Attorney General, Civil Division, Robert E. Kirschman, Jr., Director, and Deborah A. Bynum, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

Plaintiff, Pascale Pierre, alleges numerous statutory and tortious violations by governmental officers and officials committed during her service as a police recruit for the Atlanta Police Department. *See* Compl. at 1-2, 7. She names as defendants the United States of America, the Department of Justice, the Department of Labor, the Atlanta Police Department, the City of Atlanta, the Atlanta City Council, and 38 individual officers, officials, and civilian employees. *Id.* Pending before the court is the government's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") and for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6). *See* Def.'s Mot. to Dismiss ("Def.'s Mot.") at 1, ECF No. 5.

## BACKGROUND

The dispute currently pending before the court ostensibly arises from events that occurred in 2012, when Ms. Pierre served as a police recruit in the homicide unit of the Atlanta Police Department. Compl. at 2-3. The Department first hired Ms. Pierre in October 2011 and at that time informed her that to earn admission into a Police Academy class, recruits were required to participate in remedial training and remain at their administrative assignments until they passed a Physical Training Test ("PT-Test"). Compl. at 3. The PT-Test required recruits to complete a 1.5 mile run within fifteen minutes and thirty seconds and complete an obstacle course within two minutes and ten seconds. Compl. at 3.

Ms. Pierre attended the requisite remedial training until March 2012, when she pulled a ligament in her right wrist while practicing on the obstacle course wall-jump. Compl. at 3. The Atlanta Police Department sent Ms. Pierre to an orthopedic specialist for treatment. Compl. at 3. After receiving an MRI, X-ray, and examination, Ms. Pierre's wrist was bound in a cast and she was placed on a light-duty order. Compl. at 3. Ms. Pierre continued to work and attended weekly therapy sessions until she was released from therapy on August 3, 2012. Compl. at 3-4. On August 6, 2012, she returned to remedial physical training and on September 21, 2012, she was released to regular duty on an "as tolerated" order from her treating physician. Compl. at 4.

Ms. Pierre claims that during the first week of September 2012 she passed the PT-Test, running 1.5 miles in fourteen minutes and 46 seconds and completing the obstacle course in two minutes and one second. Compl. at 4. Her PT-Test score was never recorded but rather shouted "military style," and Ms. Pierre never received a paper copy. Compl. at 4. At that point, believing that she was about to enter the Academy class, Ms. Pierre informed her superior, Sergeant C. Condon, that she suffered from Crohn's disease and would need a schedule adjustment so that she could obtain infusion therapy every eight weeks. Compl. at 4.[1] Afterward, when the roster for the new Academy class was distributed, Ms. Pierre discovered that she was not listed and Sergeant Concon advised her to continue attending remedial physical training with the new recruits rather than preparing for Academy entry. Compl. at 5.

Ms. Pierre followed Sergeant Condon's instructions and continued attending remedial physical training; however, on September 12, 2012, she was injured again after falling off of a hurdle. Compl. at 5. Despite suffering "a lot of pain," she did not go to the Police Department's clinic that day. Compl. at 5. When she requested permission to see the City of Atlanta's clinic few days later, her request was denied and she was required to continue attending physical training. Compl. at 5. That same month, Ms. Pierre was also transferred from the homicide unit to the property control unit/annex. Compl. at 5. After her transfer, Ms. Pierre privately sought and obtained medical assistance, and on October 10, 2012, her treating physician placed her on a sedentary work order, which she presented to her superiors Sergeant Condon and Lt. Sheffield. Compl. at 6-7. Despite the order, Ms. Pierre was not transferred from the property control unit/annex, which she describes as "fast-paced" and manual-labor-intensive. Compl. at 7. Eventually, on November 1, 2012, Ms. Pierre was terminated for failure to meet probationary requirements. Compl. at 8.

---

[1] Crohn's disease is a chronic inflammatory disorder that affects the gastrointestinal tract.

While working in both the homicide unit and the property control unit/annex, Ms. Pierre claims that she was subject to a hostile work environment and was the victim of "silent bullying," Compl. at 5, race-based jokes targeting her Haitian heritage, discrimination based on her medical condition, and mind games including "gas-lighting," *i.e.* "a form of mental abuse where false information is presented with the intent of making victims doubt their own memory, perception, and sanity," Compl. at 12, 15. Ms. Pierre alleges that the defendants "blatantly and repeatedly disregarded and violated [f]ederal [l]aws and [the] Law Enforcement Oath of Honor," Compl. at 2, and conspired to deprive her of a "20-year career," Compl. at 14.[2] In terms of relief, Ms. Pierre demands $3 million in compensation, in addition to legal and administrative fees, for "enduring (Americans with Disabilities Act) discrimination for requesting medical accommodation" and defamation and for the "loss of[] a 20[-]year rewarding career, 20 years of lo[st] salary . . . loss of a pension plan, [loss of a] 401k plan" and loss of healthcare and "all opportunities and experiences that [p]olice [o]fficers acquire during their career[s]." Compl. at 18. In addition, Ms. Pierre requests that the court criminally prosecute the named defendants and consider the imposition of "fines and imprisonment of not less than 36 months" and "any further relief which the [c]ourt may deem appropriate." Compl. at 18-21.

## STANDARDS FOR DECISION

Before addressing the merits, a court "must satisfy itself that it has jurisdiction to hear and decide a case." *Hardie v. United States*, 367 F.3d 1288, 1290 (Fed. Cir. 2004) (quoting *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1241 (Fed. Cir. 2002)) (internal quotation marks omitted). The plaintiff bears the burden of "alleg[ing] in his pleading the facts essential to show [subject matter] jurisdiction" by a preponderance of the evidence. *McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *see also Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). When assessing a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, the court will "normally consider the facts alleged in the complaint to be true and correct." *Reynolds*, 846 F.2d at 747 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).[3]

---

[2]Ms. Pierre in her complaint lists a series of specific legal claims based upon both civil and criminal statutes, including, *inter alia*, defamation, invasion of privacy, a violation of the Civil Rights Act of 1991, Pub. L. No. 102–166, 105 Stat. 1071(codified as amended in scattered sections of the United States Code, including 42 U.S.C. §§ 1981, 2000e), withholding records and documents, 18 U.S.C. § 2071, conspiracy against rights, 18 U.S.C. § 241, deprivation of rights under color of law, 18 U.S.C. § 242, and violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. *See* Compl. at 16-17.

[3]Although generally the court holds pleadings filed by *pro se* plaintiffs to "'less stringent standards than formal pleadings drafted by lawyers,'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam)), "[t]his latitude, however, does not relieve a *pro se* plaintiff from meeting jurisdictional requirements," *Bernard v. United States*, 59 Fed. Cl. 497, 499 (2004), *aff'd*, 98 Fed. Appx. 860 (Fed. Cir. 2004); *see also Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995). Therefore, Ms. Pierre nonetheless "bears the burden of establishing the [c]ourt's jurisdiction by a preponderance of the evidence. *Riles v.*

Ms. Pierre premises this court's jurisdiction on the Tucker Act, 28 U.S.C. § 1491. *See* Compl. at 1. The Tucker Act grants this court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Act waives sovereign immunity, allowing a claimant to sue the United States for monetary damages. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The Tucker Act itself, however, does not provide a substantive right to monetary relief against the United States. *United States v. Testan*, 424 U.S. 392, 398 (1976); *see also Martinez v. United States*, 333 F.3d 1295, 1321 (Fed. Cir. 2003) (en banc). "A substantive right must be found in some other source of law." *Mitchell*, 463 U.S. at 216. To fulfill the jurisdictional requirements of the Tucker Act, the plaintiff must establish an independent right to monetary damages by identifying a substantive source of law that mandates payment from the United States for the injury suffered. *Testan*, 424 U.S. at 400; *see also Ferreiro v. United States*, 501 F.3d 1349, 1351-52 (Fed. Cir. 2007) (quoting *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)).

## ANALYSIS

Ms. Pierre's claims fall outside the realm of this court's jurisdiction. First, Ms. Pierre raises claims against improper parties. She challenges solely the conduct of the Atlanta Police Department and its employees; all of the alleged actions which she identifies occurred in Atlanta, Georgia and were taken or performed by local government actors. This court does not have jurisdiction to hear claims against states, localities, or state and local governmental entities, officials, or employees. "[T]he *only* proper defendant for any matter before this court is the United States, not its officers nor any other individual." *Stephenson v. United States*, 58 Fed. Cl. 186, 190 (2003) (emphasis in original) (citing *United States v. Sherwood*, 312 U.S. 584, 588 (1941)); *see also* 28 U.S.C. § 1491. Although Ms. Pierre in her list of "Parties" names the Department of Justice, the Department of Labor, and the United States of America, she fails to identify any relevant act committed by a federal government agent. *See* Compl. at 2; *see also* Def.'s Mot. at 4. Because Ms. Pierre's claims are limited to those against the Atlanta Police Department and its employees, the court does not have jurisdiction to entertain them.

Moreover, Ms. Pierre's complaint fails to allege any facts demonstrating the existence of a contract between her and the United States or to identify an applicable money-mandating law or regulation that would allow the court to exercise jurisdiction under the Tucker Act. *See Testan*, 424 U.S. at 398; *Mitchell*, 463 U.S. at 215-18; *see generally* 28 U.S.C. § 1491(a)(1). Ms. Pierre's claims are limited to purported discrimination based on her ethnicity and medical condition, and claims of tortious acts and criminal misconduct relating to her "hostile work environment" and PT-Test results. *See* Compl. at 16-17. This court does not possess jurisdiction to adjudicate tort claims. *See Shearin v. United States*, 992 F.2d 1195, 1197 (Fed. Cir. 2003) (noting that the Tucker Act limits this court's jurisdiction to "cases *not* sounding in tort") (quoting 28 U.S.C. § 1491(a)(1)) (emphasis in original). In addition, this court lacks jurisdiction

---

*United States*, 93 Fed. Cl. 163, 165 (2010) (citing *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002)).

over claims arising under the criminal code. *See Joshua v. United States*, 17 F.3d 378, 379 (Fed. Cir. 1994) ("The court has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code."); *see Meschkow v. United States*, 109 Fed. Cl. 637, 646 (2013) (dismissing claims brought under the federal Racketeer Influence and Corrupt Organization Act for lack of jurisdiction); *see also Campbell v. United States*, 229 Ct. Cl. 706, 707 (1981) (per curiam) (dismissing claims of treason and other criminal allegations for lack of jurisdiction). Finally, this court may not adjudicate claims alleging civil rights violations. *See, e.g., Cottrell v. United States*, 42 Fed. Cl. 144, 149 (1998) ("As courts have repeatedly held, there is no Tucker Act jurisdiction in the Court of Federal Claims to entertain claims involving race, sex, and age discrimination or other claims involving civil rights violations."); *McCauley v. United States*, 38 Fed. Cl. 250, 265-66 (1997), *aff'd*, 152 F.3d 948 (Fed. Cir. 1998) (noting that the Court of Federal Claims does not have jurisdiction over civil rights claims brought under 42 U.S.C. § 1983 or claims arising under the Americans with Disabilities Act). In sum, Ms. Pierre's claims do not confer jurisdiction on this court to hear her case.[4]

## CONCLUSION

For the reasons stated, the government's motion to dismiss is GRANTED, and Ms. Pierre's complaint is dismissed pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction.[5] The clerk shall enter judgment in accord with this disposition.

No costs.

It is so **ORDERED**.

Charles F. Lettow
Judge

---

[4]Given that the court has resolved the case on jurisdictional grounds, it need not address the government's motion to dismiss under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted.

[5]Ms. Pierre's motion for leave to proceed *in forma pauperis* is GRANTED.